[Cite as *State v. Lane*, 2011-Ohio-2381.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 25437 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| LESTER G. LANE, II | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 09 09 2705 |

DECISION AND JOURNAL ENTRY

Dated: May 18, 2011

WHITMORE, Judge.

{¶1} Defendant-Appellant, Lester Lane, II, appeals from his conviction in the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} On August 28, 2009, a Summit County Children Services caseworker visited Lane's residence at 86 Stull Avenue to conduct an assessment for a placement sought by Lane's mother. The caseworker, Anne Harrison, noticed a very strong chemical smell once inside the house. Near the end of the assessment, Harrison had to examine the entire house, including the basement where Lane slept. When Harrison informed Lane and his mother that she would be examining the basement, Lane "jokingly" asked her if she "was going to look for a meth lab" and excused himself, indicating that he would be downstairs smoking a cigarette. Harrison did not smell any cigarette smoke when she arrived downstairs, but found that she could not properly inspect the basement because it was in such disarray. The strong chemical smell soon began to

make Harrison feel ill, but both Lane and his mother denied smelling anything. Harrison ended the assessment shortly thereafter and reported to the Akron Police Department that she believed the Lane residence was housing a methamphetamine operation.

{¶3} On September 1, 2009, several officers from Akron's Clandestine Laboratory Enforcement Team searched Lane's residence and discovered numerous items, including a large amount of mason jars filled with liquid, muriatic acid, iodine tincture, red phosphorous, a large container of striker plates from matchbooks, wet coffee filters, and tubing. Later testing performed by the Ohio Bureau of Criminal Identification and Investigation ("BCI") confirmed the presence of crystal iodine and red phosphorous. Lane acknowledged, both during the search of his residence and at trial, that at least some of the foregoing items were methamphetamine-related, but claimed they belonged to a friend who had stayed at his residence until March 2005.

{¶4} On September 15, 2009, a grand jury indicted Lane on the following charges: (1) illegal manufacturing of methamphetamine, in violation of R.C. 2925.04(A); (2) illegal assembly or possession of chemicals for the manufacturing of drugs, in violation of R.C. 2925.041(A); (3) aggravated possession of methamphetamine, in violation of R.C. 2925.11(A)(C)(1); (4) possession of criminal tools, in violation of R.C. 2923.24; and (5) illegal use or possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1). The State later dismissed the aggravated possession count, and the matter proceeded to a jury trial on March 25, 2010. The jury found Lane guilty of all the remaining charges. The court merged two of the counts as allied offenses and sentenced Lane to prison.

{¶5} Lane now appeals from his illegal manufacturing conviction and raises two assignments of error for our review.

II

Assignment of Error Number One

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED DEFENDANT-APPELLANT LANE'S MOTION FOR JUDGEMENT OF ACQUITAL UNDER CRIM. 29." (Sic.)

{¶6} In his first assignment of error, Lane argues that his illegal manufacturing conviction is based on insufficient evidence. Specifically, he argues that the State failed to prove that he engaged in any actual manufacturing. We disagree.

{¶7} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks* (1991), 61 Ohio St.3d 259, 274. Furthermore:

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386.

"In essence, sufficiency is a test of adequacy." *Thompkins*, 78 Ohio St.3d at 386.

{¶8} "No person shall *** knowingly manufacture or otherwise engage in any part of the production of a controlled substance." R.C. 2925.04(A). Methamphetamine is a controlled substance. R.C. 3719.41, Schedule II(C)(2). The term "manufacture" means "to plant, cultivate, harvest, process, make, prepare, or otherwise engage in any part of the production of a drug, by propagation, extraction, chemical synthesis, or compounding, or any combination of the same, and includes packaging, repackaging, labeling, and other activities incident to production." R.C. 2925.01(J). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has

knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶9} Harrison testified that the Lane residence emitted a very strong chemical smell, which she associated with methamphetamine from having been around other methamphetamine labs in the course of her employment. Harrison acknowledged that she sometimes smells chemicals on her assessments due to the fact that people clean their homes shortly before her arrival. She testified, however, that both Lane and his mother denied having used cleaning products recently or even that they noticed any smell. Further, she testified that Lane specifically asked her, without any prompting on her part, whether she "was going to look for a meth lab" in the basement. Lieutenant Brian Simcox, the supervisor of Akron's Clandestine Laboratory Enforcement Team, confirmed that when he searched the house several days later he noted a chemical odor that he associated with methamphetamine.

{¶10} The police collected fifty-eight items as a result of their search at the Lane residence. Robert Michael Velton, a director at BCI, tested several of the items and confirmed the presence of both crystal iodine and red phosphorous. Lieutenant Simcox testified that crystal iodine and red phosphorous are main ingredients in the production of methamphetamine. He specified that crystal iodine is a DEA-protected product that is typically unavailable over the counter and that red phosphorous in powder form cannot be purchased at all. According to Lieutenant Simcox, powdered red phosphorous must be created and one of the ways to do so is to strip striker plates from matchbooks and soak them in acetone. The police found a large jar of striker plates during their search. Moreover, another officer who searched the Lane residence that day, Officer David Crockett, testified that the police found multiple mason jars filled with liquid at the residence and some of the liquid smelled like acetone. The police also found a large

container of muriatic acid and stained coffee filters. Lieutenant Simcox testified that muriatic acid is used to create the final methamphetamine product and that he has seen muriatic acid used in over 200 methamphetamine labs. He further explained that coffee filters are used during the manufacturing process to filter the red phosphorous and iodine. According to Lieutenant Simcox, the stains on the coffee filters the police found at the Lane residence were consistent with red phosphorous and crystal iodine exposure. Although the police did not find any actual methamphetamine at the residence, Lieutenant Simcox testified that it is common not to find methamphetamine in smaller, personal labs because the drug is consumed after it is produced. Lieutenant Simcox, who has investigated between 250 and 300 methamphetamine labs in the course of his career, concluded that he had "no doubt" there was a lab in Lane's basement.

{¶11} Officer Crockett testified that he spoke with Lane on the day the police conducted their search at his residence. Lane did not deny that there was a methamphetamine lab in his basement. Rather, he told Officer Crockett that the lab and the equipment at the residence belonged to a friend named Danny Beckwith, who used to live there. Danny Beckwith testified at trial and stated that he never produced methamphetamine or engaged in any part of the methamphetamine process and never stayed in Lane's basement.

{¶12} "In order to prove that a defendant manufactured a drug, the State is not required to present the drug in the form of a completed product at trial." *State v. Gerhart*, 9th Dist. No. 24384, 2009-Ohio-4165, at ¶15. The State need only prove that the defendant engaged in some part of the manufacturing process. R.C. 2925.04(A). Here, the State produced evidence that the basement in which Lane resided contained numerous components necessary for the production of methamphetamine. Those components included items, such as powdered red phosphorous, that could not be purchased. Lane did not deny that the police found these items in his house and that

they were related to methamphetamine production. To the extent he claimed the items belonged to Beckwith, that was an issue of credibility for the jury to weigh, not a question of sufficiency. Viewing all the evidence in a light most favorable to the State, a rational trier of fact could have found that Lane engaged in at least part of the production of methamphetamine. Accordingly, Lane's illegal manufacturing conviction is not based on insufficient evidence. His first assignment of error lacks merit.

Assignment of Error Number Two

"DEFENDANT-APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE."

{¶13} In his second assignment of error, Lane argues that his illegal manufacturing conviction is against the manifest weight of the evidence. Lane's sole rationale in support of this assignment of error is that, because his conviction is based on insufficient evidence, it is also against the manifest weight of the evidence. Lane's conviction is based on sufficient evidence, however, so any weight argument premised upon the opposite conclusion is meritless. Moreover, while sufficiency and weight challenges are legally distinct from one another in the context of criminal convictions, *Thompkins*, 78 Ohio St.3d at paragraph two of the syllabus, this Court will not engage in a separate manifest weight analysis when Lane has not done so. App.R. 16(A)(7). Lane's second assignment of error is overruled.

III

{¶14} Lane's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

MOORE, J.
BELFANCE, P. J.
CONCUR

APPEARANCES:

EDWIN C. PIERCE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.