[Cite as *State v. Bostwick*, 2011-Ohio-3671.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                              :
                                            :
    Plaintiff-Appellee,              :          Case No: 10CA3382
                                            :
    v.                               :
                                            :          DECISION AND
JASON D. BOSTWICK,                          :          JUDGMENT ENTRY
                                            :
    Defendant-Appellant.             :          File-stamped date:  7-21-11

_____

APPEARANCES:

George L. Davis, IV, George L. Davis, III Co., L.L.C, Portsmouth, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecutor, Portsmouth, Ohio, for Appellee.

_____

Kline, J.:

**{¶1}** Jason D. Bostwick (hereinafter "Bostwick") appeals the judgment of the Scioto County Court of Common Pleas.  After a jury trial, Bostwick was found guilty of Assembly or Possession of Chemicals Used to Manufacture Controlled Substance with Intent to Manufacture Controlled Substance, a violation of R.C. 2925.041(A).  On appeal, Bostwick first contends (1) that insufficient evidence supports his conviction and (2) that his conviction is against the manifest weight of the evidence.  We disagree.  Instead, we find substantial evidence upon which the trier of fact could have reasonably concluded that the elements of R.C. 2925.041(A) were proven beyond a reasonable doubt.  Next, Bostwick contends that his trial counsel was ineffective for not filing a motion to suppress evidence.  Because any potential motion to suppress would have

failed, we disagree. Accordingly, we overrule Bostwick's assignments of error and affirm the judgment of the trial court.

I.

**{¶2}**    Late one evening, Bostwick was driving a 1989 Ford pickup truck. State Trooper Nick Lewis (hereinafter "Trooper Lewis") was driving behind Bostwick and ran a registration check on Bostwick's vehicle. After learning that the tags on Bostwick's truck actually belonged to a 2002 Pontiac, Trooper Lewis pulled the truck over.

**{¶3}**    Trooper Lewis asked to see Bostwick's driver's license. Although he claimed to have one, Bostwick did not have a driver's license on him at the time. As a result, Bostwick was placed in the police cruiser while Trooper Lewis determined Bostwick's driving status.

**{¶4}**    While in the cruiser, Bostwick asked Trooper Lewis to turn off the truck's headlights. Apparently, Bostwick was afraid that the headlights would run down the battery. Trooper Lewis then returned to the truck and discovered a syringe on the ground. During Bostwick's trial, Trooper Lewis described finding the syringe: "I'm walking -- walked back up to the vehicle to * * * turn off the headlights, there's a syringe between the -- basically between the door and cab of the truck, basically it looks like the door came open and [the syringe] just fell to the ground." Transcript at 27. Additionally, Trooper Lewis was certain that the syringe was not there before because "it was basically in a spot where [he] would have had to step on it." Id.

**{¶5}**    Trooper Lewis knew that syringes were "common with drug abuse around [that] area." Id. And for that reason, he decided to search Bostwick's vehicle for evidence of drugs. Trooper Lewis and another state trooper then recovered the

following items from Bostwick's truck: two empty cans of starting fluid, gas cans, tubing,

brass fittings, and a broken mason jar. Recognizing that these items are used in

methamphetamine production, Trooper Lewis placed Bostwick under arrest.

**{¶6}** On February 24, 2010, a Scioto County grand jury indicted Bostwick for

"Illegal Possession of Chemicals for the Manufacture of Drugs," a third-degree felony in

violation of "R.C. 2925.041(A)/(C)." Indictment.

**{¶7}** Bostwick's jury trial took place on July 12, 2010. Trooper Lewis and Detective

John Koch (hereinafter "Detective Koch") were two of the state's witnesses. Detective

Koch testified as an expert witness on methamphetamine production, particularly the

"Nazi method" of production that is prevalent in Southern Ohio. According to Detective

Koch, the items recovered from Bostwick's truck are frequently associated with the Nazi

method.

**{¶8}** Eventually, the jury found Bostwick guilty of Assembly or Possession of

Chemicals Used to Manufacture Controlled Substance with Intent to Manufacture

Controlled Substance, and the trial court sentenced Bostwick accordingly.

**{¶9}** Bostwick appeals and asserts the following two assignments of error: I.

"Appellant's Conviction for Illegal Possession of Chemicals for the Manufacture of Drugs

was supported by insufficient evidence and was against the manifest weight of the

evidence." And, II. "Appellant was denied his constitutional right of due process based

upon ineffective assistance of counsel."

II.

**{¶10}** In his first assignment of error, Bostwick contends (1) that his conviction is

against the manifest weight of the evidence and (2) that insufficient evidence supports

his conviction. "'When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction.' *State v. Puckett*, [191 Ohio App.3d 747], 2010-Ohio-6597, at ¶34. 'Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.' Id., quoting *State v. Lombardi*, Summit App. No. 22435, 2005-Ohio-4942, at ¶9, in turn, quoting *State v. Roberts* (Sept. 17, 1997), Lorain App. No. 96CA006462[.] Therefore, we first consider whether [Bostwick's] conviction[ is] against the manifest weight of the evidence." *State v. Leslie*, Hocking App. Nos. 10CA17 & 10CA18, 2011-Ohio-2727, at ¶15 (internal footnote omitted).

{¶11}     When determining whether a criminal conviction is against the manifest weight of the evidence, we "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eskridge* (1988), 38 Ohio St.3d 56, at paragraph two of the syllabus. See, also, *State v. Smith*, Pickaway App. No. 06CA7, 2007-Ohio-502, at ¶33. We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." Id. at ¶41, citing *State v. Garrow* (1995), 103 Ohio App.3d 368, 370-371; *State v. Martin* (1983), 20 Ohio App.3d 172, 175. But "[o]n the trial of a case, * * * the weight to be given the evidence and the credibility of the

witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus.

{¶12}    Under R.C. 2925.041(A), "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II[.]"  Thus, R.C. 2925.041(A) consists of the following elements: "(1) 'knowingly,' (2) 'assemble or possess,' (3) 'chemicals that may be used to manufacture a controlled substance,' and (4) 'intent to manufacture a controlled substance[.]'"  *State v. Creech*, 188 Ohio App.3d 513, 2010-Ohio-2553, at ¶20.  Furthermore, "[m]ethamphetamine is a controlled substance.  R.C. 3719.41, Schedule II(C)(2)."  *State v. Lane*, Summit App. No. 25437, 2011-Ohio-2381, at ¶8.

{¶13}    Essentially, Bostwick advances two arguments under his first assignment of error.  First, Bostwick argues that, "at the time of the traffic stop[, he] never actually possessed any chemicals whatsoever for the manufacture of a controlled substance." Brief of Appellant at 12.  And second, Bostwick argues that "the state did not prove any intent to manufacture a controlled substance."  Id.  For these reasons, Bostwick contends that his convictions are against the manifest weight of the evidence.

{¶14}    Despite Bostwick's arguments, we find that substantial evidence supports his conviction.  Bostwick's truck contained items frequently associated with the "Nazi method" of methamphetamine production, which, according to Detective Koch, is the primary method of methamphetamine production in Southern Ohio.  For example, troopers recovered two cans of starting fluid from Bostwick's truck.  Both cans had small holes in them, and Detective Koch explained the significance of the holes: "[T]he holes

[were] punched near the bottom of these cans, and this is a method or a way to extract the ether from the starting fluid.  By turning [the can] upside down and spraying the aerosol out and punching the can, then you will have ether * * * -- it's a collection method."  Transcript at 101.  As Detective Koch noted, ether is used in the Nazi method of methamphetamine production.  In fact, Koch testified that ether "is one [of] the ingredients that [he] find[s the] most."  Transcript at 102.

**{¶15}**     In addition to the cans of starting fluid, the police recovered gas cans, tubing, brass fittings, and a broken mason jar from Bostwick's truck.  Detective Koch testified about how these items are used in the Nazi method of methamphetamine production.  Gas cans are used "to produce hydrogen chloride gas," which is a chemical used in the production of methamphetamine.  Transcript at 103.  Tubing and brass fittings are used to collect "anhydrous ammonia" and "transport chemicals * * * during the manufacturing process."  Transcript at 105.  And finally, "a lot of the cooking [of methamphetamine] is done within [mason] jars."  Transcript at 103.  Thus, the items recovered from Bostwick's truck are associated with the most prevalent form of methamphetamine production in Southern Ohio.

**{¶16}**     Here, the evidence supports the inference that Bostwick was involved in the production of methamphetamines.  First, Bostwick possessed items frequently associated with the Nazi method of production.  And second, Trooper Lewis found a syringe that apparently fell out of Bostwick's truck.  This is significant because, as Detective Lewis testified, methamphetamines are commonly injected.

**{¶17}**     Because the jury could have reasonably inferred that Bostwick was involved in methamphetamine production, we reject the two arguments under Bostwick's first

assignment of error. That is, (1) it was not necessary for the state to demonstrate that Bostwick actually possessed chemicals at the time of the traffic stop, and (2) there was substantial evidence for the jury to find that Bostwick intended to manufacture methamphetamines In rejecting Bostwick's two arguments, we recognize that the evidence against him is mostly circumstantial. But "Ohio courts have repeatedly concluded that 'circumstantial evidence can have the same probative value as direct evidence. * * * A conviction can be sustained based on circumstantial evidence alone.'" *State v. Smith*, Highland App. No. 09CA29, 2010-Ohio-4507, at ¶44, quoting *State v. Franklin* (1991), 62 Ohio St.3d 118, 124 (omission sic).

**{¶18}** We reject Bostwick's first argument because the circumstantial evidence shows that Bostwick did possess ether at some point in time. (For ease of analysis, we will limit our discussion to ether. Nevertheless, the jury could have reasonably inferred that Bostwick possessed hydrogen chloride gas, anhydrous ammonia, or other chemicals used in the Nazi method of methamphetamine production.) The cans of starting fluid had small holes in them, which, according to Detective Koch, is evidence that the cans had already been drained of ether. Thus, the jury could have reasonably inferred that Bostwick collected ether and, therefore, possessed it prior to the traffic stop.

**{¶19}** We reject Bostwick's second argument because the circumstantial evidence shows Bostwick's intent for possessing ether. "Generally, the intent of a person cannot be proven by direct evidence, thus proof of intent may be shown from circumstantial evidence." *State v. Cole*, Seneca App. No. 13-10-30, 2011-Ohio-409, at ¶23, citing *State v. Lott* (1990), 51 Ohio St.3d 160, 168. Here, Bostwick possessed items

associated with the Nazi method of methamphetamine production.  Therefore, the jury could have reasonably inferred that Bostwick possessed ether because he intended to use that ether in the production of methamphetamines.

**{¶20}** For the foregoing reasons, we find substantial evidence upon which the jury could have reasonably concluded that Bostwick's guilt had been proven beyond a reasonable doubt.  Furthermore, because Bostwick's conviction is not against the manifest weight of the evidence, we find that sufficient evidence also supports his conviction.  See *Leslie* at ¶¶15, 23.

**{¶21}** Accordingly, we overrule Bostwick's first assignment of error.

III.

**{¶22}** In his second assignment of error, Bostwick argues that his trial counsel should have filed a motion to suppress the evidence obtained from Bostwick's truck. Because his trial counsel failed to do so, Bostwick contends that he received ineffective assistance of counsel.

**{¶23}** "In Ohio, a properly licensed attorney is presumed competent and the appellant bears the burden to establish counsel's ineffectiveness."  *State v. Norman*, Ross App. Nos. 08CA3059 & 08CA3066, 2009-Ohio-5458, at ¶65 (internal quotations omitted); see, also, *State v. Wright*, Washington App. No. 00CA39, 2001-Ohio-2473; *State v. Hamblin* (1988), 37 Ohio St.3d 153, 155-56, cert. den. *Hamblin v. Ohio* (1988) 488 U.S. 975.  To secure reversal for the ineffective assistance of counsel, one must show two things: (1) "that counsel's performance was deficient * * *[,]" which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) "that the

deficient performance prejudiced the defense * * *[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington* (1984), 466 U.S. 668, 687. See, also, *Norman* at ¶65. "Failure to satisfy either prong is fatal as the accused's burden requires proof of both elements." *State v. Hall*, Adams App. No. 07CA837, 2007-Ohio-6091, at ¶11 (citation omitted).

**{¶24}** "Failing to file a motion to suppress does not constitute ineffective assistance of counsel per se." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, at ¶65, citing *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000-Ohio-448. The Supreme Court of Ohio has "rejected claims of ineffective counsel when counsel failed to file or withdrew a suppression motion when doing so was a tactical decision, there was no reasonable probability of success, or there was no prejudice to the defendant." *State v. Nields*, 93 Ohio St.3d 6, 34, 2001-Ohio-1291 (citations omitted). Furthermore, "[t]o establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question." *Brown* at ¶65, citing *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, at ¶35.

**{¶25}** Because Trooper Lewis had probable cause to search Bostwick's truck, we find that a motion to suppress would have failed. "Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement." *State v. Moore*, 90 Ohio St.3d 47, 51, 2000-Ohio-10. See, also, *Pennsylvania v. Labron* (1996), 518 U.S. 938, 940 ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus

permits police to search the vehicle without more."). "Probable cause exists when there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Evans*, Montgomery App. No. 20794, 2006-Ohio-1425, at ¶33, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 238.

**{¶26}** Here, Trooper Lewis clearly had probable cause to search Bostwick's motor vehicle. After placing Bostwick in the cruiser, Trooper Lewis returned to Bostwick's vehicle and found a syringe "between the door and cab of the truck[.]" Transcript at 27. Trooper Lewis testified that the syringe was not there when he first approached Bostwick's vehicle. Instead, Trooper Lewis believed that the syringe fell from inside the truck. As Trooper Lewis testified:

**{¶27}** "Q. Now had that syringe been at that location when you first approached that vehicle?

**{¶28}** "A. No. No, it was basically in a spot where I would have had to step on it." Id.

**{¶29}** Thus, the evidence demonstrates that the syringe came from Bostwick's truck. Furthermore, Trooper Lewis testified that, based on his experience, "syringes are common with drug abuse around [that] area." Id. As a result, we find that the discovery of the syringe established probable cause for Trooper Lewis to search Bostwick's motor vehicle. See, generally, *Wyoming v. Houghton* (1999), 526 U.S. 295, 297-98 (Police searched a vehicle after finding a "hypodermic syringe" in the driver's pocket.); *State v. Wilson*, Clinton App. No. CA2006-03-008, 2007-Ohio-353, at ¶35 (Police could have obtained a search warrant based on evidence of an "anhydrous ammonia odor and * * * syringes on the bathroom floor.").

**{¶30}** Because there was probable cause to search Bostwick's truck, any potential motion to suppress would have failed. Therefore, the failure to file a motion to suppress did not constitute ineffective assistance of counsel.

**{¶31}** Accordingly, we overrule Bostwick's second assignment of error. Having overruled both assignments of error, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Harsha, P.J. and Abele, J.:  Concur in Judgment and Opinion.


For the Court


BY:_____
      Roger L. Kline, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**