DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Marietta Municipal Court judgment of conviction and sentence. The trial court found Noah Bird, defendant below and appellant herein, guilty of operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19.
 {¶ 2} Appellant raises the following assignments of error for review:
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS OR EXCLUDE THE EVIDENCE OBTAINED AS A RESULT OF THE ILLEGAL *Page 2 
TRAFFIC STOP."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED PLAIN ERROR AND DENIED MR. BIRD DUE PROCESS OF LAW BY EXCEEDING ITS AUTHORITY DURING THE HEARING AND IN ITS SUBSEQUENT HOLDING."
 {¶ 3} On April 13, 2007, at 2:11 a.m., Marietta Police Officer Wesley Jonathan Arbaugh observed appellant's Chrysler PT cruiser travelling north on Front Street. Officer Arbaugh observed two individuals sitting in the front passenger seat, with one person sitting on the lap of the other, and "an overabundance of people in the rear seat." Officer Arbaugh stopped appellant's vehicle and he quickly determined that the vehicle, which contained seats for four passengers plus the driver, contained eight passengers. He also observed that appellant appeared to be under the influence of alcohol. Officer Arbaugh subsequently charged appellant with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and (d).
 {¶ 4} On May 1, 2007, appellant filed a motion to suppress evidence and asserted that Officer Arbaugh lacked any reasonable suspicion to stop his vehicle. At the motion hearing, Officer Arbaugh testified that it was "very possible" that the driver was unable to see his right mirror due to the presence of the two individuals seated in the passenger seat, a seat designed to hold only one passenger. Officer Arbaugh decided to stop appellant's vehicle based upon his concern that the driver's view was obstructed and also based upon his concern that the passengers were not wearing seat belts. Officer Arbaugh further testified that he did not know with certainty whether the driver's "view was in fact obstructed." Upon stopping the vehicle, Officer Arbaugh learned that another individual was riding in the vehicle's hatchback area and that a *Page 3 
total of nine people were riding in the vehicle which is designed to carry five, seated individuals.
 {¶ 5} At the close of the hearing, appellee argued that the officer possessed a reasonable suspicion to stop the vehicle to investigate whether a R.C. 4511.70 violation occurred. Appellee noted that R.C.4511.70 prohibits a person from operating a vehicle when it is loaded in such a manner to obstruct the driver's view. The trial court questioned whether R.C. 4511.20 provided the officer with a reasonable suspicion to stop the vehicle.
 {¶ 6} The trial court denied appellant's motion to suppress evidence and concluded that "operation of a five passenger vehicle with a total of the driver and eight passengers, shows a prima facie offense of [R.C] 4511.20, reckless operation." The court determined that appellant "was operating his vehicle in wanton disregard for the safety of persons in his own vehicle. Having nine passengers in five seats created a hazardous condition that was a violation of R.C. 4511.20. Ptl. Arbaugh was justified in stopping the vehicle for that violation."
 {¶ 7} Appellant later pled no contest and the trial court found him guilty as charged. This appeal followed.
 I {¶ 8} In his first assignment of error, appellant asserts that the trial court erred by overruling his motion to suppress evidence. In particular, appellant asserts that Officer Arbaugh lacked a reasonable suspicion that appellant had committed a traffic violation and could not justify the stop of the vehicle. Appellant also argues that the trial court improperly concluded that Officer Arbaugh could stop appellant's vehicle based upon a reasonable suspicion that appellant violated R.C.4511.20. *Page 4 
 {¶ 9} Initially, we note that appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. See State v. Long (1998),127 Ohio App.3d 328, 332, 713 N.E.2d 1. When ruling on a motion to suppress evidence, a trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See State v. Fanning (1982), 1 Ohio St.3d 19, 20,437 N.E.2d 583; State v. Dunlap (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988. Accordingly, a reviewing court must defer to a trial court's findings of fact if competent, credible evidence exists to support the trial court's findings. See Long, supra; State v. Medcalf (1996), 111 Ohio App.3d 142,675 N.E.2d 1268; Dunlap, supra. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Long; State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141; State v. Venham (1994), 96 Ohio App.3d 649, 645 N.E.2d 831;State v. Fields (Nov.29, 1999), Hocking App. No. 99 CA 11. See, generally, Ornelas v. United States (1996), 517 U.S. 690,116 S.Ct. 1657, 134 L.Ed.2d 911.
 {¶ 10} The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. See, e.g., Delaware v. Prouse (1979), 440 U.S. 648, 662, 99 S.Ct. 1391,59 L.Ed.2d 660. "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." Katz v. United States
(1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576.
 {¶ 11} A traffic stop initiated by a law enforcement officer implicates the Fourth Amendment. Whren v. United States (1996),517 U.S. 806, 809, 116 S.Ct. 1769, *Page 5 135 L.Ed.2d 89; see, also, Brendlin v. California (2007), ___ U.S. ___,127 S.Ct. 2400, 2406, 168 L.E.2d 132. Such a traffic stop must comply with the Fourth Amendment's general reasonableness requirement. InWhren, the United States Supreme Court recognized that theFourth Amendment's reasonable requirement is fulfilled and a law enforcement officer may constitutionally stop a vehicle's driver when the officer possesses probable cause to believe that the driver of the vehicle has committed a traffic violation. Id. The court stated:
 "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of `persons' within the meaning of [the Fourth Amendment]. * * * An automobile stop is thus subject to the constitutional imperative that it not be `unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. * * *"
Id. at 809-10 (citations omitted); see, also, Bowling Green v.Godwin, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, at ¶ 11;Dayton v. Erickson (1996), 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091.
 {¶ 12} To justify a traffic stop based upon less than probable cause, an officer must be able to articulate specific facts that would warrant a person of reasonable caution to believe that the person stopped has committed or is committing a crime, including a minor traffic violation.[1] See Terry v. Ohio (1968), 392 U.S. 1, 21, *Page 6 88 S.Ct. 1868, 20 L.Ed.2d 889; see, also, Chillicothe v. Frey,156 Ohio App.3d 296, 805 N.E.2d 551, 2004-Ohio-927, at]}14; State v. Garrett, Adams App. No. 05CA802, 2005-Ohio-5155, at ¶ 10. A court that must determine whether a law enforcement officer possessed a reasonable suspicion or probable cause to stop a vehicle must examine the "totality of the circumstances." See, e.g., Arvizu, 534 U.S. at 273. Moreover, the touchstone of a Fourth Amendment analysis is the reasonableness of the intrusion. See, e.g., Pennsylvania v. Mimms (1977), 434 U.S. 106,108-109, 98 S.Ct. 330, 54 L.Ed.2d 331.
 {¶ 13} Reasonable suspicion sufficient to conduct a stop exists if there is "at least a minimal level of objective justification for making the stop."[2] Ward low, 528 U.S. at 124. As we recently explained inState v. Emerick, Washington App. No. 06CA45, 2007-Ohio-4398, at]}15: *Page 7 
 "A traffic stop may pass constitutional muster even where the state cannot convict the driver due to a failure in meeting the burden of proof or a technical difficulty in enforcing the underlying statute or ordinance. * * * The very purpose of an investigative stop is to determine whether criminal activity is afoot. This does not require scientific certainty of a violation nor does it invalidate a stop on the basis that the subsequent investigation reveals no illegal activity is present."
(Citations omitted).
 {¶ 14} In the case at bar, we agree with the trial court's conclusion that Officer Arbaugh possessed a reasonable suspicion that appellant committed a traffic violation. R.C. 4511.20(A) states: "No person shall operate a vehicle, trackless trolley, or streetcar on any street or highway in willful or wanton disregard of the safety of persons or property." To act "willfully" means to act "intentionally, designedly, knowingly, or purposely, without justifiable excuse." State v.Earlenbaugh (1985), 18 Ohio St.3d 19, 21, 479 N.E.2d 846, citing Black's Law Dictionary (5 Ed.1979) 1434. A "wanton" act means "an act done in reckless disregard of the rights of others which evinces a reckless indifference of the consequences to the life, limb, health, reputation, or property of others." Id., citing Black's at 1419. We agree with the trial court that operating a vehicle designed to carry five, seated occupants with nine passengers constitutes a willful or wanton disregard for the safety of other persons (i.e., the passengers and other motorists who might suffer adverse consequences if the driver cannot see clearly). For example, both the front-seat passenger, who sat on another passenger's lap, and the passenger who rode in the hatchback area exceeded the vehicle's passenger design limit and, additionally, could not have properly used safety restraints. Consequently, the vehicle's passengers stood an increased and unnecessary risk of injury had a collision or sudden stop occurred. Likewise, other *Page 8 
motorists and pedestrians were endangered due to appellant's operation of the vehicle with an obstructed view. Thus, an officer reasonably could have suspected that appellant acted with a reckless indifference of the consequences to the lives, limbs, or health of his passengers by operating his vehicle without a safe place for all passengers in the vehicle to sit. Again, an officer need not have possessed probable cause that appellant violated this statute, but only a reasonable suspicion.
 {¶ 15} Appellant's assertion that the officer stopped appellant's vehicle based upon a seatbelt violation is without merit. At trial, Officer Arbaugh testified that he was concerned that the individuals positioned in the front passenger seat could have obstructed the driver's view. Thus, whether the officer also believed that a seatbelt violation may have occurred is not relevant. Furthermore, appellant's argument that the trial court's finding that R.C. 4511.20 applies, and thus renders R.C. 4513.263(D) meaningless, is unavailing. As appellee notes, the officer's reasonable suspicion was not based upon the lack of seatbelt use, but rather upon the safety of the passengers who lacked a proper seat in the vehicle. Additionally, we believe that it is certainly not unreasonable for a reasonable officer to objectively believe that two individuals seated in a vehicle's passenger seat (one seated on the other's lap) could obstruct a driver's view through the passenger window and the mirror. See R.C. 4511.70.
 {¶ 16} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first assignment of error.
 II {¶ 17} In his second assignment of error, appellant asserts that the trial court erred by "exceeding] its authority and acted as the prosecutor and judge during the hearing." We disagree with appellant. *Page 9 
 {¶ 18} Generally, notice of plain error must be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See State v. Barnes (2002), 94 Ohio St.3d 21,27, 759 N.E.2d 1240; State v. Hill (2001), 92 Ohio St.3d 191, 196,749 N.E.2d 274. The plain error rule should not be invoked unless, but for the error, the case's outcome would have been different. See State v.Jackson (2001), 92 Ohio St.3d 436, 438, 751 N.E.2d 946; State v.Sanders (2001), 92 Ohio St.3d 245, 263, 750 N.E.2d 90.
 {¶ 19} At the close of the hearing, the trial court asked the prosecutor if R.C. 4511.20 could apply. The trial court did not question witnesses or otherwise interject during the evidentiary stage of the motion hearing, even though trial court judges may do so to a limited degree in order to assist in clarifying issues of fact. Here, we do not believe that the trial court erred by questioning attorneys regarding the applicable law. Moreover, even if a trial court arguably employs improper reasoning when determining whether an officer possessed a reasonable suspicion for an investigative stop, appellate courts must nevertheless affirm the judgment if the court reached the correct result, but for the wrong reasons. See Hayes v. Toledo (1989),62 Ohio App.3d 651, 577 N.E.2d 379, quoting Agricultural Ins. Co. v.Constantine (1944), 144 Ohio St. 275, 284, 58 N.E.2d 658 (stating that `"it is the definitely established law of this state that where the judgment is correct, a reviewing court is not authorized to reverse such judgment merely because erroneous reasons were assigned as a basis thereof"); see, also, State v. Allen (1996), 77 Ohio St.3d 172,672 N.E.2d 638.
 {¶ 20} Thus, even assuming for purposes of argument that the trial court improperly, sua sponte, relied upon R.C. 4511.20 to uphold the validity of the stop, we may nevertheless affirm the trial court's judgment under R.C. 4511.70(A) which *Page 10 
provides: "No person shall drive a vehicle or trackless trolley when it is so loaded, or when there are in the front seat such number of persons, as to obstruct the view of the driver to the front or sides of the vehicle or to interfere with the driver's control over the driving mechanism of the vehicle." Once again, at the hearing Officer Arbaugh testified that it was "very possible" that appellant was unable to see his right mirror due to the presence of the two individuals sharing the passenger seat. Again, Officer Arbaugh need not have possessed probable cause or an exact certainty that appellant violated this statute, but only a reasonable suspicion.
 {¶ 21} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second assignment of error and affirm the trial court's judgment.
 JUDGMENT AFFIRMED. *Page 12 
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as *Page 13 
herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
McFarland, J.: Concurs in Judgment Opinion
Kline, J.: Concurs in Judgment Opinion as to Assignment of Error II, Concurs In Judgment Only as to Assignment of Error I with Opinion
[1] In Godwin, the Ohio Supreme Court noted that a split of authority has developed as to whether a traffic stop may be based solely upon reasonable suspicion. See id. at]}13, quoting Gaddis ex rel. Gaddis v.Redford Twp. (E.D.Mich.2002), 188 F.Supp.2d 762, 767 ("Authorities seem to be split as to whether a traffic stop is reasonable when supported merely by reasonable suspicion, or whether the heightened standard of probable cause must underlie the stop."). The court concluded, however, that because the officer in Godwin possessed probable cause to conduct the traffic stop, it need not resolve the question. We continue to follow the view that a traffic stop may be based solely upon a reasonable suspicion.
[2] As we observed in State v. Dunfee, Athens App. No. 02CA37,2003-Ohio-5970:
 "Often enough, the Fourth Amendment has to be applied on the spur (and in the heat) of the moment, and the object in implementing its command of reasonableness is to draw standards sufficiently clear and simple to be applied with a fair prospect of surviving judicial second-guessing months and years after an arrest or search is made. Courts attempting to strike a reasonable Fourth Amendment balance thus credit the government's side with an essential interest in readily administrable rules. See New York v. Belton, 453 U.S. 454, 458, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (Fourth Amendment rules "`ought to be expressed in terms that are readily applicable by the police in the context of the law enforcement activities in which they are necessarily engaged'" and not "`qualified by all sorts of ifs, ands, and buts'").
Id., quoting Atwater v. Lago Vista (2001), 532 U.S. 318, 347,121 S.Ct. 1536, 149 L.Ed.2d 549.