[Cite as *State v. Eatmon*, 2013-Ohio-4812.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 12CA3498 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| WILLIAM D. EATMON, | : | |
| | : | **RELEASED: 10/24/13** |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Neil S. McElroy, Toledo, Ohio, for appellant.

Mark E. Kuhn, Scioto County Prosecutor, and Pat Apel, Scioto County Assistant Prosecutor, Portsmouth, Ohio, for appellee.

_____

Harsha, J.

{¶1} A jury found William Eatmon guilty of various drug offenses and possession of criminal tools stemming from a traffic stop where police seized Oxycodone from a vehicle Eatmon drove. Eatmon appeals the trial court's denial of his motion to suppress evidence and argues that the traffic stop was illegal because it was based on insufficient information from an informant. However even if we assume, without deciding, that the informant's information did not justify the stop, police had both reasonable suspicion and probable cause for the stop because an officer observed Eatmon commit a turn signal violation.

{¶2} Next Eatmon contends police lacked probable cause to search the vehicle. However, a drug dog alerted them to the presence of illegal drugs in the vehicle, so police had probable cause to search the entire vehicle. Therefore, we reject this argument.

{¶3} Finally, Eatmon asserts that police lacked probable cause to arrest him. However, this claim appears to be based on his assumption that the stop and search that led to his arrest were unconstitutional. Because we found these events were constitutional, his claim must also fail.

I. Facts

{¶4} The Scioto County grand jury indicted Eatmon on one count each of trafficking in drugs, aggravated possession of drugs, conspiracy to traffic in drugs, and possession of criminal tools. Eatmon filed a motion to suppress Oxycodone police found in the glove compartment and inside an aerosol can in a vehicle Eatmon drove and to suppress cell phone records. At a hearing on the motion, Detective Joshua Justice of the Portsmouth Police Department testified that he received a call from one of his informants (who he identified by name during the hearing) who gave him information in the past that led to drug convictions. Justice testified that the informant told him she met a subject from Detroit who went by the street name "Mike" at the Oasis, and he offered to sell her Oxycodone. A few days later, the informant called Justice again and told him that Mike would be at Kmart in a four-door, blue, "newer" car with a crack on the back passenger door to sell her 100 Oxycodone pills for $23.00 each. Two people would be in the vehicle – the driver Mike and a front seat passenger who "was always laying down back in the vehicle." The passenger would be "darker skinned" than Mike.

{¶5} Within a half hour, Justice went to the Kmart parking lot. The vehicle was not there initially but in "a very short time the vehicle did arrive" with three occupants. The vehicle had a crack or cut on the driver's door. Eatmon was the driver, the front passenger was "laying back in the vehicle," and there was a back seat passenger.

Justice set up surveillance at a different location while other detectives watched Eatmon. When Eatmon left Kmart, three detectives followed him in one car, and Justice got behind that car. Justice testified that Eatmon turned from West Street onto Gallia Street without using a turn signal. About 10 blocks later, police stopped Eatmon based on the informant's information and the turn signal violation.

{¶6} Detective Lee Bower testified that he is a canine handler. He went to the scene of the traffic stop, and his canine alerted him to the presence of the odor of an illegal narcotic in Eatmon's vehicle. The dog alerted between the front and rear passenger door. The front seat passenger had marihuana. Law enforcement also found Oxycodone in the vehicle.

{¶7} The trial court orally denied Eatmon's motion to suppress, stating:

> Well, the Court will make a finding that the confidential informant who has been known to be very reliable in the past indicated to Detective Justice that a - - a Detroit man named Mike offered to sale [sic] her pills. She met Mike at the Oasis, and she also advised what the car looked like. And the officers went to Kmart and - - and did - - the canine did alert on the - - once it got into town.
>
> Based upon the foregoing I'm going to find the Defendant's motion is not well taken and therefore overrule it.

{¶8} Subsequently, a jury found Eatmon guilty of the charged offenses. After sentencing, he appealed.

## II. Assignment of Error

{¶9} Eatmon assigns the following error for our review:

1. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS.

## III. Motion to Suppress

{¶10} In the sole assigned error, Eatmon contends the trial court erred when it

denied his motion to suppress. Our review of a decision on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Accordingly, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Accepting those facts as true, we must "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.* at ¶ 8.

{¶11} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Section 14, Article I of the Ohio Constitution also prohibits unreasonable searches and seizures. Because Section 14, Article I and the Fourth Amendment contain virtually identical language, the Supreme Court of Ohio has interpreted the two provisions as affording the same protection. *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001).

{¶12} Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the

burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible." *State v. Smith*, 4th Dist. Ross No. 12CA3308, 2013-Ohio-114, ¶ 12, citing *Maumee v. Weisner*, 87 Ohio St.3d 295, 297, 720 N.E.2d 507 (1999). In this case, law enforcement did not obtain a warrant prior to the traffic stop or vehicle search.

## A. The Traffic Stop

**{¶13}** Initially, Eatmon challenges the constitutionality of the traffic stop. "An officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person within the meaning of the Fourth Amendment * * *." *State v. Lewis*, 4th Dist. Scioto No. 08CA3226, 2008-Ohio-6691, ¶ 14. "To be constitutionally valid, the detention must be reasonable under the circumstances." *Id.* While probable cause "is certainly a complete justification for a traffic stop," it is not required. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23. So long as "an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *Id.* at ¶ 8. Reasonable and articulable suspicion is a lower standard than probable cause. *See id.* at ¶ 23. "To conduct an investigatory stop, the officer must be able to point to specific and articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual is engaged or about to be engaged in criminal activity." *State v. Kilbarger*, 4th Dist. Hocking No. 11CA23, 2012-Ohio-1521, ¶ 15, citing *State v. Williams*, 51 Ohio St.3d 58, 60-61, 554 N.E.2d 108 (1990). "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the

surrounding circumstances." *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

{¶14} Despite this authority, Eatmon contends law enforcement needed probable cause to stop his vehicle. In support of his argument, he cites *State v. Young*, 6th Dist. Erie No. E-04-013, 2005-Ohio-3369, ¶ 20, which states: "When a vehicle is stopped for the purpose of effecting an immediate, warrantless arrest, * * * police must have probable cause for the stop and the arrest[.]" Even if we agreed this constituted an accurate statement of law, contrary to Eatmon's claim, it is not "apparent" that police intended to effectuate an "immediate arrest" when they stopped him. (Appellant's Br. 13). And in any event, as we explain below, the record supports a finding that reasonable suspicion and probable cause existed for the stop.

{¶15} The rest of Eatmon's argument on the stop focuses on inconsistencies between certain information the informant gave and what law enforcement observed at Kmart and on the purported failure of police to corroborate other information provided by the informant. However, even if we assume, without deciding, that the trial court erred to the extent it appeared to rely on the informant's tip as a justification for the stop, the record still supports a finding that the traffic stop was constitutional. *See State v. Sebastian*, 4th Dist. Highland No. 08CA19, 2009-Ohio-3117, ¶ 25 (stating that when a trial court states an incorrect basis for its judgment, an appellate court must affirm if the judgment is legally correct on other grounds because the error is not prejudicial); *State v. Bird*, 4th Dist. Washington No. 07CA32, 2008-Ohio-540, ¶ 19 ("E]ven if a trial court arguably employs improper reasoning when determining whether an officer possessed a reasonable suspicion for an investigative stop, appellate courts must nevertheless

affirm the judgment if the court reached the correct result, but for the wrong reasons.")

{¶16}   Detective Justice testified that Eatmon turned from West Street onto Gallia Street without using a turn signal.  In other words, Eatmon violated R.C. 4511.39.  And "[i]t is well-settled that a law enforcement officer possesses both reasonable suspicion and probable cause to stop a vehicle when the officer observes a traffic violation." *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 15.  Therefore, the trial court correctly found the traffic stop was constitutionally valid, even if it did not specifically mention the turn signal violation in its oral ruling.

## B.  The Vehicle Search

{¶17}  Next, Eatmon contends law enforcement lacked probable cause to search the vehicle he drove.  However, as the trial court noted, once police stopped the vehicle, a drug dog alerted them to the presence of illegal drugs in it.  " '[T]he "automobile exception" allows a police officer to conduct a warrantless search of portions of a motor vehicle provided he has probable cause to believe it contains evidence of a crime.' " *State v. Williams*, 4th Dist. Highland No. 12CA7, 2013-Ohio-594, ¶ 25, quoting *State v. Brooks*, 3d Dist. Hancock No. 5-11-11, 2012-Ohio-5235, ¶ 32.  " ' "[W]hen a [drug] dog alerts to the presence of drugs, it gives law enforcement probable cause to search the entire vehicle." ' " *Williams* at ¶ 25, quoting *State v. Johnson*, 6th Dist. Lucas No. L-06-1035, 2007-Ohio-3961, ¶ 9, in turn, quoting *State v. Nguyen*, 157 Ohio App.3d 482, 2004-Ohio-2879, 811 N.E.2d 1180, ¶ 22 (6th Dist.).  Therefore, we reject Eatmon's argument.

## C.  The Arrest

{¶18}  Finally, Eatmon contends police lacked probable cause to arrest him.

However, this claim appears to be based on Eatmon's assumption that the stop and search were unconstitutional, i.e., the arrest must be invalid because it was based on an illegal search and seizure. Because we found the stop and search constitutional, Eatmon's contention is meritless.

### D. Conclusion

{¶19} We overrule the sole assignment of error and affirm the judgment below.

JUDGMENT AFFIRMED.

### JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. & Hoover, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
      William H. Harsha, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**