[Cite as *State v. Chaffins*, 2014-Ohio-1969.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | Case No. 13CA3559 |
| v. | : | |
| | | DECISION AND |
| KEITH A. CHAFFINS, | : | JUDGMENT ENTRY |
| Defendant-Appellant. | : | RELEASED 05/07/2014 |

APPEARANCES:

Bryan Scott Hicks, Lebanon, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Matthew A. Wisecup, Scioto County
Assistant Prosecuting Attorney, Portsmouth, Ohio, for Appellee.

Hoover, J.

{¶ 1} Defendant-appellant, Keith A. Chaffins, was found guilty of several drug

possession offenses, possession of criminal tools, possession of chemicals for the manufacture of

methamphetamine, and having a weapon while under disability after a jury trial in the Scioto

County Common Pleas Court. The verdict resulted from the seizure of numerous items of

contraband that police located after a search of Chaffins' vehicle. Chaffins appeals the trial

court's denial of his motion to suppress evidence, arguing that the search of the vehicle was

unlawful. However, given the totality of the evidence in this case, the police had probable cause

to search the vehicle.

{¶ 2} Chaffins also contends that the evidence introduced at trial is insufficient to support

his convictions, or alternatively that the convictions are against the manifest weight of the

evidence. We disagree, because after viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Further, a review of the entire record fails to persuade us that the jury lost its way or created a manifest miscarriage of justice. Accordingly, we affirm the judgment below.

{¶ 3} On the evening of January 9, 2012, an employee at the Advance Auto Parts store in New Boston, Ohio, contacted police to report possible criminal activity at the store. Patrolmen Kevin Lewis and Justin Bittinger of the New Boston Police Department responded to the call; and while at the store, the officers confronted Chaffins and Joshua McCallister about allegations that the pair had attempted to shoplift various items, including starting fluid. Upon asking Chaffins for identification, Patrolman Lewis observed that Chaffins had a large sum of money in his wallet, approximately $1,140. Chaffins first claimed that the money had come from a roofing job he had just completed. Given the time of year, Patrolman Lewis found this claim to be suspicious, and further questioned Chaffins about the money. Chaffins then claimed that he had just received his tax refund. Patrolman Lewis also found this response to be suspicious given the time of year. The officers then took the men outside to talk with them separately. While outside, Chaffins indicated that the white Chevrolet S-10 pick-up truck, that the pair drove to the auto parts store, actually belonged to his brother, Danny Patten. Notably, a similar vehicle had been reported to the New Boston Police Department earlier in the evening, as possibly being involved in drug activity outside the CVS Pharmacy in New Boston.[1] While speaking with Chaffins, Patrolman Lewis shined his flashlight into the bed of the truck and observed in plain sight, a duffle bag on the passenger side of the vehicle truck bed. Patrolman Lewis could see that the

_____

[1] The earlier report noted possible drug activity by two males in a white Chevrolet S-10 parked in the CVS parking lot. However, the report noted that the vehicle had Ohio tags; while the vehicle parked at Advance Auto Parts had Kentucky tags.

duffle bag had an unzipped pocket, exposing multi-colored balloons and white pill tablets. Patrolman Lewis testified that balloons are commonly used to package and conceal drugs, and that he could see that one of the balloons actually had a white pill inside of it.

{¶ 4} While Patrolman Lewis interacted with Chaffins, Patrolman Bittinger dealt primarily with McCallister. According to Patrolman Bittinger, McCallister admitted that he intended to shoplift items from the auto parts store. McCallister also dropped an orange syringe cap on the ground while speaking with Patrolman Bittinger.

{¶ 5} Ultimately, the Patrolmen decided to conduct a search of the pick-up truck. The search revealed a second duffle bag inside the cab of the truck that contained clear tubing; syringes, some containing a red liquid; and an aluminum soda can. Patrolman Lewis further found, in the cab of the truck, syringes; 10 unopened Claritin-D tablets; multiple plastic baggies; a D-cell battery with a false bottom that contained heroin and drug paraphernalia; Suboxone tablets, containing buprenorphine; an empty box of generic Sudafed; and vials containing an unknown liquid. Also, in the center console of the truck, Patrolman Lewis located an operational 9mm semi-automatic handgun, loaded with two hollow point rounds; a blue box containing a tourniquet; syringes; a sealed Fentanyl patch; a set of digital scales; a baggie of marijuana; a Ziploc baggie containing a white powder, later determined to be heroin; and plastic baggies with ying-yang symbols on them. Finally, green tablets later determined to be Clonazepam and five cell phones were found inside the truck; and 30 coffee filters were found in the bed of the truck. Following the search, Chaffins and McCallister were arrested and taken into custody.

{¶ 6} On April 3, 2012, the Scioto County Grand Jury returned separate indictments that charged Chaffins and McCallister with the following 9 counts: having a weapon while under disability, a third-degree felony in violation of R.C. 2923.13(A)(2)/(3); possession of marijuana,

a minor misdemeanor, in violation of R.C. 2925.11(A)/(C)(3)(a); possession of criminal tools, being digital scales, a fifth-degree felony, in violation of R.C. 2923.24(A)/(C); aggravated possession of drugs, being Fentanyl, a fifth-degree felony, in violation of R.C. 2925.11(A)/(C)(1)(a); possession of drugs, being Buprenorphine, a fifth-degree felony, in violation of R.C. 2925.11(A)/(C)(2)(a); possession of drugs, being heroin, a fifth-degree felony, in violation of R.C. 2925.11(A)/(C)(6)(a); possession of drug paraphernalia, a fourth-degree misdemeanor, in violation of R.C. 2925.14(A)(12)/(F)(1); illegal possession of chemicals for the manufacture of methamphetamine, a third-degree felony, in violation of R.C. 2925.041; and possession of drugs, being Clonazepam, a fifth-degree felony, in violation of R.C 2925.11(A)/(C)(2)(a).

{¶ 7} On September 19, 2012, Chaffins filed a motion to suppress the evidence obtained from the search of the truck, arguing that such evidence was the fruit of an unconstitutional search. Because the suppression hearing could not be concluded in one day, a second hearing date was held. Thereafter, each party submitted a supplemental brief on the suppression issues. Ultimately, the trial court issued a decision overruling the motion to suppress.

{¶ 8} A jury trial[2] commenced on May 20, 2013, and the jury found Chaffins guilty of all nine counts of the indictment. Chaffins was thereafter sentenced to an aggregate prison term of 71 months. Chaffins filed a timely notice of appeal.

{¶ 9} On appeal, Chaffins asserts the following assignments of error:

First Assignment of Error:

THE COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS.

Second Assignment of Error:

---

[2] The trials of McCallister and Chaffins were consolidated.

THE VERDICT WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE
AS WELL AS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 10} In his first assignment of error, Chaffins contends that the trial court erred when it denied his motion to suppress. Our review of a trial court's decision on a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Accordingly, we defer to the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Landrum,* 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th Dist.2000). Accepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case. *Burnside* at ¶ 8.

{¶ 11} At the hearings on the motion, Patrolman Lewis testified that he and Patrolman Bittinger were dispatched to Advance Auto Parts at approximately 8 p.m. on January 9, 2012, in regards to a complaint that two men were attempting to shoplift items from the store. Patrolman Lewis testified that a store employee notified him that the suspects arrived together, in a white S-10 pick-up truck. When Patrolman Lewis first encountered Chaffins inside the store, Chaffins had either brake fluid or starter fluid in his possession and admitted that he intended to shoplift the items. Patrolman Lewis testified that upon asking for identification, he noticed that Chaffins had a large sum of cash on hand, and that Chaffins gave conflicting accounts of how he came to obtain the money. Patrolman Lewis indicated that throughout his interactions with Chaffins, he became increasingly suspicious of his activities. Patrolman Lewis also testified that the two suspects gave conflicting reports of their activities that evening. Patrolman Lewis then asked Chaffins to go outside so as to not interfere with the business or other customers inside the store. Once outside, Patrolman Lewis continued to question Chaffins in the store parking lot. Lewis

testified that when they were outside, he asked Chaffins if the white S-10 pick-up truck belonged to him. Chaffins indicated that the truck belonged to Danny Patten, his brother. Lewis testified that he tried to verify ownership of the vehicle, and that he spoke on the telephone to Patten's wife. Patten's wife indicated to Lewis that her husband had sold the truck to Chaffins, and that they were not related to Chaffins. Lewis testified that the truck was of particular interest to him, because less than an hour prior, the police department had received a telephone call that a similarly described truck with similar license plate numbers had been involved in drug activity at the CVS Pharmacy in New Boston. Lewis than shined his flashlight into the truck bed where he noticed a duffle bag with an open zipper. Inside the opened pocket of the duffle bag, Lewis could see multi-colored balloons and white pill tablets. He further testified that he could actually see a pill inside one of the balloons. Lewis testified, that in his training and experience, balloons are typically used to conceal illegal narcotics. Patrolman Lewis then decided to search the truck. After finding contraband in the vehicle, Chaffins and McCallister were placed under arrest.

{¶ 12} Patrolman Lewis also testified that at the time of the incident, he was field training Patrolman Bittinger, and that Patrolman Bittinger was not cleared to work on his own. He explained that given the time of day, the fact that both officers would have had to leave the scene, the mobility of the vehicle, and that no other officers were on duty that night, he believed that the contraband would have been destroyed had they obtained a warrant prior to the search of the vehicle.

{¶ 13} Patrolman Bittinger testified that he dealt primarily with McCallister, while Patrolman Lewis dealt with Chaffins. Bittinger testified that McCallister openly admitted that his intentions were to steal items from the store. Bittinger testified that McCallister agreed to continue questioning in the store parking lot. Bittinger testified that once they were outside,

McCallister dropped an orange syringe cap. Bittinger also testified that the prior report of drug activity at CVS, involving the similar described vehicle, was made approximately 40 minutes prior to the shoplifting report.

{¶ 14} The trial court denied Chaffins' motion to suppress by judgment entry, stating:

Officers of the New Boston Police Department responded to a shoplifting event on January 13 [sic], 2012, at the Advance Auto Parts store in New Boston, Ohio. The defendants readily admitted they were going to shoplift and the defendants were asked to come outside of the business so the business was not disturbed.

The defendants' vehicle matched the description of a vehicle that had been reported on the CVS Pharmacy lot with suspicion of drug activity. One of the New Boston officers was in training and as they questioned the defendants they [sic] McCallister drop a syringe cap and defendant Chaffins had a large sum of money in his wallet and told conflicting stories where the money came from. While in the parking lot near the defendants' vehicle, one of the New Boston Police officers shined a light in the bed of the truck and spotted several balloons and white pills. A question arose about the ownership of the vehicle and the officers learned that Chaffins had bought vehicle on an earlier date.

Based upon the foregoing, the officers conducted a search of the vehicle and found numerous drug paraphernalia and drugs along with a handgun. The officers also found evidence of materials used for the manufacture of methamphetamine.

This Court finds that based upon a plain view doctrine and the further fact that exigent circumstances existed that the defendants' motions to suppress are not well taken and are overruled.

{¶ 15} "The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides: 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' " *State v. Eatmon*, 4th Dist. Scioto No. 12CA3498, 2013-Ohio-4812, ¶ 11. "Section 14, Article I of the Ohio Constitution also prohibits unreasonable searches and seizures." *Id*. "Because Section 14, Article I and the Fourth Amendment contain virtually identical language, the Supreme Court of Ohio has interpreted the two provisions as affording the same protection." *Id*., citing *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001).

{¶ 16} "Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions." *Id*. at ¶ 12, citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). " 'Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the [S]tate to establish that the warrantless search or seizure was constitutionally permissible.' " *Id*., quoting *State v. Smith*, 4th Dist. Ross No. 12CA3308, 2013-Ohio-114, ¶ 12. In the case sub judice, the officers did not obtain a warrant prior to the vehicle search.

{¶ 17} Here, Chaffins does not challenge the constitutionality of his detention while the officers investigated the shoplifting complaint. Rather, his primary argument is that the plain

view doctrine, under the circumstances of the case, did not apply, and thus the search of the vehicle violated his Fourth Amendment rights. However, even if we were to assume, without deciding, that the trial court erred to the extent it appeared to rely on the plain view doctrine, the record still supports a finding that the search was constitutional under the automobile exception. *See State v. Sebastian*, 4th Dist. Highland No. 08CA19, 2009-Ohio-3117, ¶ 25 (finding that when a trial court states an incorrect basis for its judgment, an appellate court must nonetheless affirm if the judgment is legally correct on other grounds, because such error is not prejudicial); *State v. Bird*, 4th Dist. Washington No. 07CA32, 2008-Ohio-540, ¶ 19 ("[E]ven if a trial court arguably employs improper reasoning when determining whether an officer possessed a reasonable suspicion for an investigative stop, appellate courts must nevertheless affirm the judgment if the court reached the correct result, but for the wrong reasons.").

{¶ 18} " '[T]he "automobile exception" allows a police officer to conduct a warrantless search of portions of a motor vehicle provided he has probable cause to believe it contains evidence of a crime.' " *State v. Williams*, 4th Dist. Highland No. 12CA7, 2013-Ohio-594, ¶ 25, quoting *State v. Brooks*, 3d Dist. Hancock No. 5-11-11, 2012-Ohio-5235, ¶ 32; *see also Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more."), and *State v. Fox*, 4th Dist. Washington No. 03CA63, 2004-Ohio-6972, ¶ 14 ("Where police officers have probable cause to search an entire vehicle they may conduct a warrantless search of every part of the vehicle and its contents that may logically conceal the object of the search."). " 'Probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." ' " *State v. Bostwick*, 4th Dist. Scioto No. 10CA3382, 2011-Ohio-3671, ¶ 25, quoting

*State v. Evans,* 2d Dist. Montgomery No. 20794, 2006–Ohio–1425, ¶ 33, quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶ 19} Here, the record evidence established that the officers had probable cause to search the vehicle. For one, it is undisputed that Chaffins and McCallister arrived to the auto parts store in the vehicle. Second, Chaffins and McCallister gave conflicting reports to the officers regarding their whereabouts during the day. Chaffins also had a large sum of cash on hand, and gave conflicting stories on how he came to procure the money. Chaffins also denied ownership of the vehicle, but the officers were able to verify that he had actually purchased the vehicle at an earlier date. These facts, coupled with the earlier report of drug activity involving a similarly described vehicle; the observation in open view of the pill tablets and balloons in the truck bed; and the observation of the orange syringe cap[3] upon the person of Chaffins' co-defendant, all gave rise to the probable cause determination that the vehicle likely contained contraband or evidence of a crime.

{¶ 20} Chaffins contends that the officers' observation of unknown pills next to party balloons is not incriminating. However, Patrolman Lewis testified at the suppression hearing that, in his training and experience, balloons are commonly used to conceal narcotics. Moreover, Patrolman Lewis testified that he could actually see a pill inside one of the balloons. Chaffins also contends that the earlier report of possible drug activity at the New Boston CVS store, involving a similarly described vehicle, was unreliable. He points to the fact that the license plate numbers did not match, and that, in fact, the report noted that the vehicle had Ohio plates, whereas Chaffins' vehicle contained Kentucky plates. However, given the proximity in time and location and the similarly described vehicle, we do not believe that the report was completely

---

[3] In *Bostwick*, supra, we held that an officer's discovery of a syringe near the defendant's vehicle established probable cause to search the vehicle. *Bostwick* at ¶ 29.

unreliable. Moreover, the report of the similar vehicle is merely one factor, out of many, in the probable cause analysis.

{¶ 21} Based on the foregoing, the search of the vehicle was constitutionally valid under the automobile exception, and we need not address Chaffins' plain view argument. Accordingly, Chaffins' first assignment of error is overruled.

{¶ 22} In his second assignment of error, Chaffins contends that his convictions should be overturned because they are not supported by sufficient evidence, or alternatively, are against the manifest weight of the evidence. Specifically, Chaffins argues that he was not consciously aware of the contraband located in his vehicle. Thus, Chaffins contends that the State failed to prove that he possessed the items located in the vehicle. Because Chaffins limits his challenge to the element of whether he possessed the items, we limit our review accordingly.

{¶ 23} The "arguments concerning the 'sufficiency' and 'manifest weight' of the evidence present two distinct legal concepts." *State v. Davis*, 4th Dist. Ross No. 12CA3336, 2013-Ohio-1504, ¶ 12. "When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt." *Id*. "The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Id.*, citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 24} Therefore, when we review a sufficiency of the evidence claim in a criminal case, we review the evidence in a light most favorable to the prosecution. *State v. Hill,* 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant,* 67 Ohio St.3d 465, 477, 620 N.E.2d 50

(1993). A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion the trier of fact did. *State v. Tibbetts,* 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh,* 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶ 25} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *State v. Topping*, 4th Dist. Lawrence No. 11CA6, 2012-Ohio-5617, ¶ 60. "When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses." *Id*. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *E.g., State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. DeHass,* 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Murphy,* 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31.

{¶ 26} "Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citations omitted.) *Davis*, 2013-Ohio-1504 at ¶ 14. "A reviewing court should find a conviction against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction." (Citations omitted.) *Id*. at ¶ 15.

{¶ 27} For the drug possession charges, the State had to present evidence that Chaffins knowingly obtained, possessed, or used the controlled substances, i.e. the drugs located

throughout the vehicle. R.C. 2925.11. For the having a weapon under disability charge, the State had to present evidence that Chaffins knowingly acquired, had, carried, or used the firearm located in the center console. R.C. 2923.13. For the possessing criminal tools charge, the State needed to prove that Chaffins possessed or controlled the digital scales located in the center console with the purpose to use it criminally. R.C. 2923.24. For the possession of drug paraphernalia charge, the State needed to present evidence that Chaffins knowingly possessed with purpose to use, drug paraphernalia, i.e. the hypodermic needles located throughout the vehicle. R.C. 2925.14. And for the illegal possession of chemicals for the manufacture of methamphetamine charge, the State had to present evidence that Chaffins knowingly possessed one or more chemicals that may be used to manufacture methamphetamine with the intent to manufacture methamphetamine. R.C. 2925.041.

{¶ 28} The crux of Chaffins' argument is that the State failed to prove possession, even constructive possession. As this Court has previously explained:

> Possession may be actual or constructive. Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession. Constructive possession exists when an individual is able to exercise dominion or control of an item, even if the individual does not have the item within his immediate physical possession. For constructive possession to exist, it must also be shown that the person was conscious of the presence of the object. Although a defendant's mere proximity is in itself insufficient to establish constructive possession, proximity to the object may constitute some evidence of constructive possession. Thus, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the

contraband, may establish constructive possession.

(Citations, quotations, and brackets omitted.) *State v. Kingsland,* 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.). Furthermore, constructive possession may be established by circumstantial evidence, and two or more persons may have joint constructive possession of a particular item. *State v. Griffin*, 4th Dist. Scioto No. 12CA3484, 2013-Ohio-3309, ¶ 24; *State v. Durr*, 4th Dist. Scioto No. 11CA3411, 2012-Ohio-4691, ¶ 45.

{¶ 29} Despite Chaffins' contentions to the contrary, the State did present sufficient evidence that could support a finding of joint constructive possession of the contraband located in the pick-up truck. Besides the recitation of facts expressed above, additional testimony supports the conclusion that Chaffins' knew about the contraband located throughout the vehicle, and that he had the ability to exercise dominion and control over the contraband. For instance, Shawn Lawhun, an employee at Advance Auto Parts in New Boston, testified that he saw Chaffins and McCallister arrive together in the white S-10 pick-up truck at around 8 p.m. on January 9, 2012. He further testified that the men appeared to be "doped up." He also observed the men attempt to steal starter fluid, and other products. In his voluntary police statement, admitted as evidence at trial, Lawhun indicated that Chaffins was the driver of the vehicle, and McCallister was seated in the passenger seat.

{¶ 30} Ami Weiler testified that she was at the CVS Pharmacy in New Boston at approximately 7:00 p.m. on January 9, 2012, when she witnessed two males in a white S-10 pick-up truck with a white powdery substance sitting on the console between the driver and passenger seats. Ms. Weiler was so concerned about what she saw, that she reported the incident to the police. At trial, she also identified Chaffins as one of the men she saw at CVS that evening.

{¶ 31} Melissa Patten testified that Chaffins purchased the white S-10 from her husband in December 2011. She further testified that she and her husband cleaned the entire vehicle before delivering it to Chaffins and left no personal belongings inside the vehicle. Danny Patten testified he sold Chaffins the vehicle on Christmas Eve 2011. He also testified that he cleared all personal belongings from the truck, including from the center console of the truck, before delivering it to Chaffins. Finally, he testified that he is not Chaffins' brother, and is not related to Chaffins in any way.

{¶ 32} John Koch, a Sergeant with the Southern Ohio Drug Task Force, testified that plastic tubing, aluminum cans, pseudoephedrine[4], coffee filters, starting fluid, plastic baggies, digital scales, syringes, and tourniquets are all items used in the manufacture, sale, or use of methamphetamine. Sergeant Koch also testified that a review of an online database confirmed that McCallister had purchased 2.4 grams of Claritin-D on January 9, 2012, at 6:32 p.m.

{¶ 33} Besides the above evidence, the jury could have also considered the abundance of contraband located in the vehicle, some of which was plainly visible and should have been readily apparent to Chaffins. "The presence of such a vast amount of drug evidence in the car supports an inference that the appellant knew about the presence of the drugs and that he, along with his [co-defendant], exercised control over each of the items found." *State v. Riggs,* 4th Dist. Washington No. 98CA39, 1999 WL 727952, *5 (Sept. 13, 1999), citing *State v. Soto,* 8th Dist. Cuyahoga No. 57301, 1990 WL 145651 (Oct. 4, 1990). "Furthermore, a factfinder can 'conclude that a defendant who exercises dominion and control over an automobile also exercises dominion and control over illegal drugs found in the automobile.' " *State v. Yakimicki*, 10th Dist. Franklin No. 12AP-894, 2013-Ohio-2663, ¶ 23, quoting *State v. Rampey,* 5th Dist. Stark No. 2004CA00102, 2006–Ohio–1383, ¶ 37. Thus, considering all of the evidence, especially in a

---

[4] Sergeant Koch testified that Claritin-D contains pseudoephedrine.

light most favorable to the prosecution, we conclude that there was sufficient evidence to support the conclusion that Chaffins had constructive, joint possession over the contents of the vehicle.

{¶ 34} Moreover, the weight of the evidence supports the finding that Chaffins had joint possession of the contraband. Chaffins was seen exiting the vehicle with McCallister just prior to the search. Chaffins was the owner of the vehicle, and Melissa and Danny Patten testified that they had cleared out all personal belongings prior to transferring the vehicle to Chaffins. Chaffins also appeared to be under the influence of drugs; and was identified by Weiler as one of the men seen at CVS with a white powdery substance, just an hour or two prior to the search of the vehicle.

{¶ 35} Thus, viewing the evidence in its totality, and deferring to the jury's credibility determinations, we cannot conclude that this is an exceptional case that requires reversal, or that the jury clearly lost its way. Accordingly, Chaffins's second assignment of error is overruled.

{¶ 36} Chaffins's assignments of error are overruled and the judgment of the Scioto County Common Pleas Court is affirmed.

                                                            JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. and Harsha, J.: Concur in Judgment and Opinion.

For the Court

By:_____
            Marie Hoover, Judge


**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.