[Cite as *State v. Robinson*, 2016-Ohio-905.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 14CA24 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| EVELYN M. ROBINSON, | : | |
| Defendant-Appellant. | : | RELEASED 03/04/2016 |

APPEARANCES:

Robert W. Bright, Middleport, Ohio, for appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and Robert C. Anderson, Lawrence County Assistant Prosecuting Attorney, Ironton, Ohio, for appellee.

Hoover, J.

{¶1} Defendant-appellant, Evelyn M. Robinson ("Robinson"), appeals her convictions and sentence for heroin possession and trafficking in heroin after a search of her vehicle revealed the drugs. The Lawrence County Court of Common Pleas denied Robinson's motion to suppress the evidence found as a result of the search; and Robinson was subsequently found guilty, following a jury trial, of possession of heroin in excess of 250 grams, with a major drug offender specification, and of trafficking in heroin in excess of 250 grams, with a vehicle forfeiture specification. At Robinson's sentencing hearing, the trial court found that the offenses should merge for sentencing purposes; and the State elected to sentence Robinson on the possession of heroin charge.

{¶2} Because we determine that the trial court properly denied Robinson's motion to suppress, and that Robinson's remaining assignments of error pertaining to her possession and

trafficking convictions are similarly without merit, we affirm the judgment of the trial court in part. However, because the trial court erred in certain respects when sentencing Robinson, we reverse the judgment in part and remand the cause for proceedings consistent with this decision.

## I. Facts and Procedural History

{¶3}     This case arose after Robinson's vehicle was stopped by an Ohio State Highway Patrolman for an alleged traffic violation, at approximately 3:00 a.m. on October 19, 2013, near Ironton, Ohio. Robinson was traveling alone in the vehicle. Upon stopping Robinson and obtaining her driver's information, Trooper Joshua Craft learned that Robinson had a warrant for her arrest for her failure to appear on a misdemeanor marijuana possession charge in Marion Municipal Court in Marion, Ohio. He also observed that Robinson was nervous and trembling and learned that she was traveling from Detroit, Michigan, to Huntington, West Virginia, an alleged drug pipeline. Thereafter, Robinson was arrested on the warrant and read her Miranda rights. While Trooper Craft was completing a request to tow form, Officer Ronnie Lusk of the Huntington (West Virginia) Police Department responded with his K-9 Milo. The K-9 alerted on Robinson's vehicle; and Trooper Craft and Trooper Ryan Robirds conducted a probable cause search of the vehicle. The search of the vehicle revealed, behind the right tail light assembly, in the wheel well, 297 grams of heroin. The detention of Robinson and search of the vehicle took several hours.

{¶4}     On October 22, 2013, Robinson was indicted with one count of possession of heroin in an amount greater than 250 grams, a first degree felony in violation of R.C. 2925.11(A)(C)(6)(f), with a major drug offender specification, and one count of trafficking in heroin in an amount greater than 250 grams, a first degree felony in violation of R.C. 2925.03(A)(2)(C)(6)(g), with a vehicle forfeiture specification. Robinson pleaded not guilty to

the charges. On February 26, 2014, Robinson filed a motion to suppress the evidence seized as a result of the traffic stop and warrantless search of her vehicle. The trial court overruled the motion, concluding that Trooper Craft had probable cause to stop Robinson's vehicle based on his observation of a left turn signal violation, and that probable cause existed to search the vehicle based on the circumstances learned and observed by Trooper Craft during the stop.

{¶5}    Robinson was tried before a jury on June 26, 27, and July 1, 2014. At the conclusion of the trial, Robinson was convicted of both counts as indicted. On July 2, 2014, the trial court held Robinson's sentencing hearing. At the hearing, the State conceded that the offenses were allied offenses of similar import and should merge for purposes of sentencing. The trial court agreed; and the State elected to proceed to sentencing on the possession of heroin offense and accompanying major drug offender specification. Ultimately, the trial court sentenced Robinson to eleven years of incarceration; ordered a fine of $10,000; ordered a two-year[1] driver's license suspension; ordered Robinson's 2003, white Cadillac Escalade be forfeited to the Lawrence County Drug and Major Crime Task Force; and ordered her to pay court costs. Robinson's trial counsel subsequently moved to set aside the mandatory fine contending that Robinson was indigent. The trial court granted the motion and ordered that the mandatory fine be waived.

{¶6}    Shortly thereafter, a sentencing entry was journalized memorializing the sentence. Robinson filed a timely notice of appeal on August 7, 2014.[2] Robinson's initial appellate counsel filed both a motion to withdraw as counsel and an *Anders* brief. We disagreed with appellate

---

[1] At the sentencing hearing, the trial court imposed a one-year driver's license suspension. However, in its sentencing entry, the trial court imposed a two-year driver's license suspension.
[2] An "amended" sentencing entry was filed on August 15, 2014. It appears that the amended entry differs from the original sentencing entry in that it changes the VIN of the forfeited vehicle and adds the mileage of the forfeited vehicle. In all other respects, the amended sentencing entry appears to be identical to the original sentencing entry. A second "amended" sentencing entry was filed on August 25, 2014. The second amended entry appears identical to the first amended entry, except for the forfeited vehicle's VIN.

counsel's assessment that the appeal was wholly frivolous, and instead identified several

arguable issues for appeal. Accordingly, we granted appellate counsel's motion to withdraw, but

appointed present counsel to prepare the appellate brief currently before the Court.

## II. Assignments of Error

{¶7}    Robinson assigns the following errors for our review:

First Assignment of Error:

> THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO A PERIOD OF POST-RELEASE CONTROL EVEN THOUGH THE TRIAL COURT DID NOT GIVE APPELLANT NOTIFICATION OF THE PERIOD OF POST-RELEASE CONTROL AT THE SENTENCING HEARING.

Second Assignment of Error:

> THE TRIAL COURT ERRED IN ORDERING THAT THE APPELLANT'S VEHICLE SHOULD BE FORFEITED.

Third Assignment of Error:

> THE TRIAL COURT ERRED IN OMITTING FROM THE SENTENCING ENTRY THE FACT THAT THE OFFENSES OF POSSESSION OF HEROIN AND TRAFFICKING IN HEROIN WERE ALLIED AND SHOULD MERGE.

Fourth Assignment of Error:

> THE TRIAL COURT ERRED IN INCLUDING IN THE SENTENCING ENTRY THE IMPOSITION OF A MANDATORY FINE EVEN THOUGH THE TRIAL COURT HAD PREVIOUSLY WAIVED THAT FINE.

Fifth Assignment of Error:

> THE TRIAL COURT ERRED IN CONVICTING THE APPELLANT IN THE ABSENCE OF ANY EVIDENCE THAT THE APPELLANT KNOWINGLY POSSESSED OR TRAFFICKED IN HEROIN.

Sixth Assignment of Error:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED ILLEGALLY AFTER APPELLANT'S ARREST SOLELY RELATED TO APPELLANT'S FAILURE TO APPEAR ON A MISDEMEANOR MARIJUANA CHARGE.

Seventh Assignment of Error:

THE JUDGMENT OF THE TRIAL COURT SHOULD BE REVERSED BECAUSE THE JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND/OR PLAINLY IN ERROR.

### III. Law and Analysis

{¶8}   Due to the nature of Robinson's assignments of error, we elect to address the assignments of error out of order; and in some instances, we address the assignments of error jointly.

### A. Robinson's Motion to Suppress

{¶9}   In her sixth assignment of error, Robinson contends that the trial court erred in overruling her motion to suppress evidence. Specifically, Robinson argues that she was unlawfully detained as the result of a pretextual stop and that the search of her vehicle was also unlawful.

{¶10}  Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Gurley*, 4th Dist. Scioto No. 14CA3646, 2015-Ohio-5361, ¶ 16, citing *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. At a suppression hearing, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. *Id*.; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Thus, when reviewing a ruling on a motion to suppress, we defer to the trial court's findings of fact if they are supported by competent, credible evidence. *Gurley* at ¶ 16, citing *State v. Landrum*, 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th Dist.2000). However,

"[a]ccepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case." *Id*., citing *Roberts* at ¶ 100.

{¶11}   At the March 14, 2014 suppression hearing, Trooper Craft testified that he was on road patrol on County Road 21 during the early morning hours of October 19, 2013. County Road 21 runs perpendicular to State Route 93 near Ironton, Ohio. Trooper Craft had his cruiser parked on County Road 21 with his high beams shining across State Route 93. At approximately 2:50 a.m., Trooper Craft observed Robinson driving her white, Cadillac Escalade south on State Route 93 in the direction of Ironton. Trooper Craft testified that Robinson's speed slowed significantly upon seeing his marked cruiser. Trooper Craft also stated that Robinson had a tight grip of the steering wheel and that she abruptly turned her head away from Trooper Craft as she passed his cruiser.

{¶12}   Upon making these observations, Trooper Craft began to follow Robinson's vehicle down State Route 93. At that time he ran a registration check of the vehicle and learned that the vehicle was from Detroit, Michigan. Trooper Craft also testified that Robinson was driving well below the posted speed limit and that she drove up the entrance ramp connecting State Route 93 to U.S. 52 at an unusually slow speed. Trooper Craft stated that Robinson failed to use her left turn signal as she exited the ramp onto U.S. 52. He claims that Robinson was weaving within the lane, and had actually committed "several marked lane violations".

{¶13}   According to Trooper Craft's testimony, he initiated a traffic stop of Robinson's vehicle based on the turn signal violation. Robinson had travelled approximately three miles from the time Trooper Craft began following her to the point where she was stopped. Trooper Craft testified that Robinson was trembling and nervous upon making initial contact; however, she was able to provide her Michigan driver's license as requested. Robinson explained to

Trooper Craft that she was traveling to Huntington, West Virginia, to visit her nephew. Trooper Craft observed air fresheners in every vent of the vehicle; and he did not see any luggage while he looked into the vehicle. He found those observations to be suspicious.

{¶14}   After running Robinson's driver's license, Trooper Craft learned that Robinson had an outstanding warrant out of Marion, Ohio, for a failure to appear on a misdemeanor marijuana possession charge and that her license was suspended on an OVI suspension. Trooper Craft then advised Robinson that he was placing her under arrest on the outstanding warrant. Robinson was read her Miranda rights and placed in the back of Trooper Craft's cruiser.

{¶15}   Trooper Craft testified that sometime after discovering the outstanding warrant, but prior to placing Robinson under arrest, he requested that a K-9 officer respond to the scene. Prior to Trooper Craft completing form HB25D (request for tow), Officer Lusk of the Huntington (West Virginia) Police Department responded with his K-9, Milo. Milo then conducted a sniff of the vehicle and alerted to the passenger side of the vehicle indicating the presence of narcotics. Trooper Craft and Trooper Robirds then searched the vehicle while Robinson remained secured in the back of Trooper Craft's cruiser. According to Craft, the search revealed approximately 297 grams of heroin found in a sock in a natural void of the vehicle behind the rear passenger tail light assembly – also described as the wheel well. The time from the initial traffic stop to the conclusion of the search spanned approximately three hours.[3]

{¶16}   " 'The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures.' " *State v. Shrewsberry*, 4th Dist. Ross No. 13CA3402, 2014-Ohio-716, ¶ 14, quoting *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. "This constitutional guarantee is

---

[3] A three hour-long dash-cam video from Trooper Craft's cruiser, recorded from just prior to the traffic stop through the search of the vehicle, was also admitted as evidence at the suppression hearing.

protected by the exclusionary rule, which mandates the exclusion of the evidence obtained from the unreasonable search and seizure at trial." *Id*., citing *Emerson* at ¶ 15; *see also State v. Lemaster*, 4th Dist. Ross No. 11CA3236, 2012-Ohio-971, ¶ 8 ("If the government obtains evidence through actions that violate an accused's Fourth Amendment rights, that evidence must be excluded at trial.").

### 1. The Initial Traffic Stop Was Lawful.

{¶17}  "An officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person within the meaning of the Fourth Amendment * * *." *State v. Lewis*, 4th Dist. Scioto No. 08CA3226, 2008-Ohio-6691, ¶ 14; *see also State v. Eatmon*, 4th Dist. Scioto No. 12CA3498, 2013-Ohio-4812, ¶ 13 (quoting *Lewis*). "To be constitutionally valid, the detention must be reasonable under the circumstances." *Lewis* at ¶ 14. "While probable cause 'is certainly a complete justification for a traffic stop,' it is not required." *Eatmon* at ¶ 13, quoting *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23. "So long as 'an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid.' " *Id*., quoting *Mays* at ¶ 8. "Reasonable and articulable suspicion is a lower standard than probable cause." *Id*., citing *Mays* at ¶ 23.

{¶18}  Here, Robinson argues that her behavior was not unusual when she first approached Trooper Craft and suggests that Trooper Craft followed her and initiated the traffic stop as a pretext to conduct a drug investigation. However, based on the uncontroverted testimony of Trooper Craft at the suppression hearing, we conclude that the initial traffic stop was lawful due to his observations that (1) Robinson was weaving within her lane of travel; (2) Robinson had actually committed "several marked lane violations"; and (3) Robinson had

initiated a left merge without properly signaling. Because Trooper Craft observed these traffic violations, the initial traffic stop was lawful, regardless of Trooper Craft's real intent in effectuating the stop. *See State v. Dennewitz*, 4th Dist. Ross No. 99CA2491, 1999 WL 1001109, *3 (Nov. 5, 1999) (rejecting notion that pretextual traffic stops are unconstitutional).

{¶19}   Trooper Craft testified that he witnessed Robinson weaving within her lane and crossing the lane on a few occasions while she traveled on U.S. 52. Trooper Craft also observed Robinson's failure to use her left turn signal as she exited the ramp onto U.S. 52. Robinson's actions in doing so provided reasonable suspicion and probable cause for the traffic stop. *See State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 15 ("It is well-settled that a law enforcement officer possess both reasonable suspicion and probable cause to stop a vehicle when the officer observes a traffic violation.").

{¶20}   Because Trooper Craft credibly testified that he observed Robinson commit two traffic violations, he was entitled to initiate the traffic stop of the vehicle regardless of whether he had another subjective or pretextual motivation for making the stop.

**2. The Delay in Procuring the K-9 Unit Was Not an Unreasonable Detention.**

{¶21}   Robinson also contends that the warrantless search of her vehicle was unlawful. Robinson's argument requires us to consider two aspects: (1) the delay in procuring the K-9 unit; and (2) the officers' extensive search of the vehicle following the K-9's alert.

{¶22}   Typically, "[w]hen a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates." *State v. Aguirre*, 4th Dist. Gallia No. 03CA5, 2003-Ohio-4909, ¶ 36, citing *State v. Carlson*, 102 Ohio App.3d 585, 598, 657 N.E.2d 591 (9th

Dist.1995*); see also Rodriguez v. United States*, 135 S.Ct. 1609, 1615, 191 L.Ed.2d 492 (2015)

(ordinary inquiries incident to a traffic stop include "checking the driver's license, determining

whether there are outstanding warrants against the driver, and inspecting the automobile's

registration and proof of insurance"). However, "[a]n officer may expand the scope of the stop

and may continue to detain the vehicle without running afoul of the Fourth Amendment if the

officer discovers further facts which give rise to a reasonable suspicion that additional criminal

activity is afoot." *State v. Rose*, 4th Dist. Highland No. 06CA5, 2006-Ohio-5292, ¶ 17, citing

*State v. Robinette*, 80 Ohio St.3d 234, 240, 685 N.E.2d 762 (1997). The *Robinette* court

explained, at paragraph one of the syllabus:

> When a police officer's objective justification to continue detention of a person *
> * * is not related to the purpose of the original stop, and when that continued
> detention is not based on any articulable facts giving rise to a suspicion of some
> illegal activity justifying an extension of the detention, the continued detention to
> conduct a search constitutes an illegal seizure.

Conversely, "if a law enforcement officer, during a valid investigative stop, ascertains

'reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then

further detain and implement a more in-depth investigation of the individual.' " *Rose* at ¶ 17,

quoting *Robinette* at 241.

{¶23}  Against this backdrop, the Supreme Court in *Rodriguez v. United States*, *supra*,

recently held that while a police officer "may conduct certain unrelated checks during an

otherwise lawful traffic stop * * * he may not do so in a way that prolongs the stop, absent the

reasonable suspicion ordinarily demanded to justify detaining an individual." *Id*. at 1615.

Accordingly, the Court concluded that police officers may not extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff. *Id*. at 1614-1617.

{¶24}  Here, we conclude that the K-9 sniff did not subject Robinson to any additional and unlawful detention or delay because she had already been placed under arrest on the open warrant. Therefore, we need not address whether reasonable suspicion of criminal activity justified Robinson's detention beyond the time necessary to complete the traffic infraction investigation. In other words, upon Robinson's arrest on the open warrant, this case was removed from the realm of traffic stop detention. We further conclude that because Robinson and her vehicle were lawfully detained at the time of the K-9 sniff, no Fourth Amendment violation occurred. *See State v. Jones*, 1st Dist. Hamilton No. C-130359, 2014-Ohio-3110, ¶¶ 15-16, citing *United States v. Robinson*, W.D.N.C. No. 5:08-cr-20, 2009 WL 3261709 (Oct. 8, 2009) (holding that no Fourth Amendment violation occurred where a defendant was under lawful arrest at the time officers conducted a K-9 sniff of the defendant's vehicle; the officers left the vehicle where the defendant parked it; and the officers did not prevent anyone else from taking possession of the vehicle); *see also State v. Lopez*, 166 Ohio App.3d 337, 2006-Ohio-2091, 850 N.E.2d 781, ¶ 21 (1st Dist.) (holding that a K-9 sniff of the exterior of a vehicle is not a search for Fourth Amendment purposes where the vehicle has been lawfully detained).

{¶25}  Put simply, the minimal investigative delay in obtaining the K-9 unit did not run afoul of the Fourth Amendment because Robinson was already placed under arrest; and both her and her vehicle were lawfully detained.

### 3. The Officers Had Probable Cause to Search the Vehicle.

{¶26}  Finally, the officers possessed probable cause to conduct a search of Robinson's vehicle. Under the "automobile exception" to the warrant requirement, police officers may

perform a warrantless search of a vehicle so long as they have probable cause to believe the vehicle contains contraband or evidence of a crime. *State v. Chaffins*, 4th Dist. Scioto No. 13CA3559, 2014-Ohio-1969, ¶ 18; *State v. Williams*, 4th Dist. Highland No. 12CA7, 2013-Ohio-594, ¶ 25. "Moreover, if a trained narcotics dog 'alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband.' " *State v. Cahill*, 3d Dist. Shelby No. 17-01-19, 2002-Ohio-4459, ¶ 22, quoting *State v. French*, 104 Ohio App.3d 740, 749, 663 N.E.2d 367 (12th Dist.1995); *see also Williams* at ¶ 25 (Quotations omitted.) ("When a [drug] dog alerts to the presence of drugs, it gives law enforcement probable cause to search the entire vehicle.").

{¶27}   Here, Trooper Craft testified that the K-9 alerted to the presence or scent of illegal substances in the vehicle. Therefore, the law enforcement officers had probable cause to conduct a warrantless search of Robinson's vehicle for contraband.

{¶28}   Because neither the initial traffic stop, follow-up detention, nor search of Robinson's vehicle violated the Fourth Amendment, we conclude that the trial court did not err in overruling Robinson's motion to suppress evidence. Accordingly, Robinson's sixth assignment of error is overruled.

### B. The Sufficiency and Manifest Weight of the Evidence

{¶29}   In her fifth assignment of error, Robinson contends that the evidence adduced at trial was insufficient as a matter of law to support the guilty verdicts for possession of heroin under R.C. 2925.11(A)(C)(6)(f) and trafficking in heroin under R.C. 2925.03(A)(2)(C)(6)(g). Specifically, she claims that her drug convictions are not supported by sufficient evidence because the record is devoid of any evidence that she was aware of, let alone exercised dominion

or control over, the drugs located in her vehicle. In her seventh assignment of error, Robinson claims that her convictions are against the manifest weight of the evidence.

{¶30} "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014–Ohio–1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence. *State v. Kirkland*, 140 Ohio St.3d 73, 2014–Ohio–1966, 15 N.E.3d 818, ¶ 132.

{¶31} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011–Ohio–6254, 960 N.E.2d 955, ¶ 119. "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387. But the weight and credibility of evidence are to be determined by the trier of fact. *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. "A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it." *Id*. We defer to the trier of fact on these evidentiary weight and

credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Id*.

{¶32} For the drug possession charge, the State had to present evidence that Robinson knowingly obtained, possessed, or used the controlled substances, i.e. the drugs located in the wheel well of the vehicle. R.C. 2925.11(A). For the trafficking charge, the State needed to present evidence that Robinson knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed a controlled substance or a controlled substance analog, and knew or had reasonable cause to believe that the controlled substance or controlled substance analog was intended for sale or resale by herself or another person. R.C. 2925.03(A)(2).

{¶33} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). "[P]ossession" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "Possession may be actual or constructive." *State v. Moon*, 4th Dist. Adams No. 08CA875, 2009–Ohio–4830, ¶ 19, citing *State v. Butler*, 42 Ohio St.3d 174,175, 538 N.E.2d 98 (1989) ("[t]o constitute possession, it is sufficient that the defendant has constructive possession").

{¶34} " ' "Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession." ' " *State v. Criswell*, 4th Dist. Scioto No. 13CA3588, 2014-Ohio-3941, ¶ 10, quoting *State v. Kingsland*, 177 Ohio App.3d 655,

2008–Ohio–4148, 895 N.E.2d 633, ¶ 13 (4th Dist.), quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004–Ohio–5747, ¶ 39. " 'Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession.' " *Id.,* quoting *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus; *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009–Ohio– 5390, ¶ 19. "For constructive possession to exist, the [S]tate must show that the defendant was conscious of the object's presence." *Id.*, citing *Hankerson* at 91; *Kingsland* at ¶ 13. "Both dominion and control, and whether a person was conscious of the object's presence may be established through circumstantial evidence." *Id.*, citing *Brown* at ¶ 19. "Moreover, two or more persons may have joint constructive possession of the same object." *Brown* at ¶ 19.

{¶35} " 'Although a defendant's mere proximity is in itself insufficient to establish constructive possession, proximity to the object may constitute some evidence of constructive possession. * * * Thus, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession.' " *Criswell* at ¶ 11, quoting *Kingsland* at ¶ 13.

{¶36} The State's evidence presented at trial, which included testimony from Trooper Craft and other law enforcement officers, supported the jury's conclusion that Robinson had knowledge of the drugs and exercised dominion and control over them. For instance, the testimony presented at the jury trial showed that Robinson was nervous and trembling upon being stopped for the traffic violation. She also indicated that she was traveling from Detroit, Michigan, to Huntington, West Virginia, a known drug pipeline according to testimony. When asked whom she was visiting, Robinson first said her nephew Lamont Haywood. When asked later, after the heroin had been discovered, Robinson said her nephew's name was Delmont

Haywood. At trial, Robinson testified that she was on her way to visit her nephew Darnell

Haywood, a student at Marshall University. However, during the State's rebuttal case, evidence

was presented that no one by the names of Lamont Haywood, Delmont Haywood, or Darnell

Haywood ever attended Marshall University. Also, it was established at trial that Robinson was

the registered owner of the vehicle; and no one else was present when the vehicle was stopped by

law enforcement. Finally, video of when Robinson was placed in the police cruiser while the

officers searched her vehicle showed that Robinson was very concerned just prior to the officer's

taking off the taillight and discovering the heroin.

{¶37}   Moreover, "[t]he presence of such a vast amount of drug evidence in the car

supports an inference that the appellant knew about the presence of drugs and that he * * *

exercised control over each of the items found." *State v. Riggs*, 4th Dist. Washington No.

98CA39, 1999 WL 727952, *5 (Sept. 13, 1999), citing *State v. Soto*, 8th Dist. Cuyahoga No.

57301, 1990 WL 145651 (Oct. 4, 1990). "[A] factfinder can 'conclude that a defendant who

exercises dominion and control over an automobile also exercises dominion and control over

illegal drugs found in the automobile.' " *State v. Yakimicki*, 10th Dist. Franklin No. 12AP–894,

2013–Ohio–2663, ¶ 23, quoting *State v. Rampey*, 5th Dist. Stark No. 2004CA00102, 2006–

Ohio–1383, ¶ 37.

{¶38}   Although Robinson testified at trial that she had no idea drugs were present in her

vehicle, the jury was free to believe all, part, or none of Robinson's testimony. *West*, *supra*, at ¶

23; *see also State v. Gavin*, 4th Dist. Scioto No. 13CA3592, 2015-Ohio-2996, ¶ 29. Moreover,

when conflicting evidence is presented at trial, a conviction is not against the manifest weight of

the evidence simply because the jury believed the testimony presented by the State. *State v.*

*Tyson,* 4th Dist. Ross No. 12CA3343, 2013–Ohio–3540, ¶ 21.

{¶39}  In short, the jury had before it sufficient evidence to conclude that Robinson knew about the contraband in her vehicle, and that she had the ability to exercise dominion and control over the contraband. Moreover, the jury apparently found the State's version of events more credible than Robinson's; and they were free to do so. This is not an exceptional case where the evidence weighs heavily in favor of the defendant and where it is clear that the jury lost its way or created a manifest miscarriage of justice. Accordingly, we overrule Robinson's fifth and seventh assignments of error.

### C. The Sentencing Errors

{¶40}  In assignments of error one through four, Robinson alleges various sentencing errors. When reviewing felony sentences we apply the standard of review set forth in R.C. 2953.08(G)(2). *See State v. Brewer,* 2014–Ohio–1903, 11 N.E.3d 317, ¶ 33 (4th Dist.) ("we join the growing number of appellate districts that have abandoned the *Kalish* plurality's second-step abuse-of-discretion standard of review; when the General Assembly reenacted R.C. 2953.08(G)(2), it expressly stated that '[t]he appellate court's standard of review is not whether the sentencing court abused its discretion' "). R.C. 2953.08(G)(2) specifies that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds that "the record does not support the sentencing court's findings" under the specified statutory provisions or "the sentence is otherwise contrary to law."

### 1. Post-Release Control

{¶41}  In her first assignment of error, Robinson contends that the trial court erred by imposing a period of post-release control in the sentencing entry because the court failed to notify her of the period of post-release control at the sentencing hearing. We agree.

{¶42}   Here, while the sentencing entry indicates "[t]he [c]ourt informed [Robinson] that she shall be subject to a period of post-release control", a review of the sentencing hearing transcript reveals no such notification.

> Under R.C. 2929.19(B)(2)(c) and (e), a trial court must notify certain felony
> offenders at the sentencing hearing that: 1.) the offender is subject to statutorily
> mandated postrelease control; and 2.) the parole board may impose a prison term
> of up to one-half of the offender's originally-imposed prison term if the offender
> violates the post-release control conditions. Not only is a trial court required to
> notify the offender about postrelease control at the sentencing hearing, it is further
> required to incorporate that notice into its journal entry imposing sentence.
> However, the main focus of the postrelease control sentencing statutes is on the
> notification itself and not on the sentencing entry.

(Citations and quotations omitted.) *State v. Adkins*, 4th Dist. Lawrence No. 13CA17, 2014-Ohio-3389, ¶ 36. "When a trial court fails to provide the required notification at either the sentencing hearing or in the sentencing entry, *that part of the sentence* is void and must be set aside." (Emphasis sic.) *Id*. at ¶ 37, citing *State v. Fischer,* 128 Ohio St.3d 92, 2010–Ohio–6238, 942 N.E.2d 332, ¶¶ 27–29. " '[I]n most cases, the prison sanction is *not* void and therefore "only the offending portion of the sentence is subject to review and correction." ' " *Id*., quoting *State v. Holdcroft,* 137 Ohio St.3d 526, 2013–Ohio–5014, 1 N.E.3d 382, ¶ 7, quoting *Fischer* at ¶ 27.

{¶43}   Although the record in this case shows that the trial court notified Robinson about post-release control and the potential consequences for violating her post-release control conditions in its sentencing entry, it was also statutorily required by R.C. 2929.19(B)(2)(c) and

(e) to notify her at the sentencing hearing. Because it failed to do so, that portion of her sentence is void and we sustain Robinson's first assignment of error.

## 2. Forfeiture of Robinson's Vehicle

{¶44}  In her second assignment of error, Robinson contends that the trial court erred in ordering the forfeiture of her vehicle.

{¶45}  Here, the trial court ordered Robinson's vehicle to be forfeited, even though the underlying trafficking in heroin offense that was the basis for the vehicle forfeiture specification merged into the possession of heroin offense. At least one Ohio appellate court has held this practice to be contrary to law, stating as follows:

> [I]t is impermissible to sentence an offender for a specification when the underlying offense upon which the specification is predicated has merged with another allied offense. To hold otherwise would result in improperly imposing a penalty enhancement under circumstances where there can be no sentence imposed for the underlying predicate offense. Thus, the trial court's act of sentencing [the defendant] on specifications that were predicated on offenses that were merged is contrary to law.

*State v. Roper*, 9th Dist. Summit Nos. 26631, 26632, 2013-Ohio-2176, ¶ 11.

{¶46}  We agree with the rationale expressed by our sister district in *Roper*, and hold that the trial court's order that Robinson's vehicle be forfeited to the State is contrary to law. Accordingly, we sustain Robinson's second assignment of error.

## 3. Clerical Sentencing Errors

{¶47}   In her third and fourth assignments of error, Robinson contends that the trial court erred by mistakenly: (1) omitting from the sentencing entry that the offenses of possession of heroin and trafficking in heroin were allied and should merge (third assignment of error); and (2) including in the sentencing entry the imposition of a mandatory fine even though it had previously waived the imposition of the fine (fourth assignment of error).

{¶48}   While a court speaks through its journal entries, clerical errors in judgments, orders, or other parts of the record may be corrected at any time. *State v. Carsey*, 4th Dist. Athens No. 14CA5, 2014-Ohio-3682, ¶ 12; Crim.R. 36. Trial courts retain continuing jurisdiction to correct clerical errors in judgments by nunc pro tunc entry to reflect what the court actually decided. *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 13.

{¶49}   At the sentencing hearing, the trial court determined that the offenses of possession of heroin and trafficking in heroin were allied and should merge; and it was determined at the hearing that the trafficking in heroin charge would merge into the possession of heroin charge. However, the sentencing entry does not reflect this merger. Rather, the sentencing entry states a prison term of eleven years without indicating the fact of merger or to which offense the prison sentence relates. Furthermore, at the sentencing hearing the trial court ordered a $10,000 mandatory fine and Robinson's counsel indicated that he would be seeking waiver of the fine because Robinson was indigent. After the hearing, on July 9, 2014, Robinson's counsel filed a motion to set aside the mandatory fine. That same day, the trial court granted the motion and ordered that the fine be waived. Nonetheless, in the sentencing entry filed on July 10, 2014, the trial court imposed the $10,000 fine. Thus, the sentencing entry appears to include at least two clerical errors in need of correction. Accordingly, we sustain Robinson's third and fourth assignments of error.

## IV. Conclusion

{¶50}   Based on the foregoing, we affirm Robinson's convictions, but reverse and vacate the trial court's vehicle forfeiture order, and remand the matter for resentencing limited to the issue of the proper imposition of post-release control. Upon remand, the trial court should also correct its sentencing entry to (1) accurately reflect our order to vacate the vehicle forfeiture; (2) accurately reflect what occurred at the sentencing hearing with respect to merger; and (3) to clarify that the mandatory fine has been waived due to Robinson's indigence.

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART,
AND CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED. Appellant and Appellee shall split the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and Abele, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
Marie Hoover, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**